# No. 19-1644

IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

MAYOR AND CITY COUNCIL OF BALTIMORE,
*Plaintiff-Appellee*
*v.*
B.P. P.L.C., et al.,
*Defendants-Appellants*

No. 1:18-cv-02357-ELH
On Appeal from The U.S.
District Court for the
District of Maryland,
Hon. Ellen L. Hollander

**BRIEF OF THE NATIONAL LEAGUE OF CITIES; THE U.S. CONFERENCE OF MAYORS; AND THE INTENRATIONAL MUNICIPAL LAWYERS ASSOCIATION AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFF-APPELLEE AND AFFIRMANCE**

Michael Burger
Susan Kraham
MORNINGSIDE HEIGHTS LEGAL
SERVICES, INC.
Columbia Environmental Law Clinic
435 W. 116th St.
New York, NY 10027
212-854-2372
*Counsel for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the National League of Cities, the U.S. Conference of Mayors and the International Municipal Lawyers Association ("Local Government Amici"), by and through their undersigned attorney, hereby certify that they each have no parent corporation and that no publicly held corporation owns 10% or more of any of their stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT...........................................................i

TABLE OF AUTHORITIES.................................................................................iii

STATEMENT OF IDENTIFICATION.................................................................1

BACKGROUND....................................................................................................5

ARGUMENT.........................................................................................................10

I.     FEDERALISM PRINCIPLES REQUIRE APPELLATE REVIEW OF THE DISTRICT COURT'S REMAND ORDER BE LIMITED TO THE ISSUE CONGRESS EXPRESSLY EXCEPTED……………………………….10

II.     THERE ARE NO "UNIQUELY FEDERAL INTERESTS" AT STAKE IN THIS CASE SUFFICIENT TO REQUIRE CONVERSION OF PLAINTIFF'S STATE LAW CLAIMS INTO FEDERAL LAW CLAIMS OR TO CONFER FEDERAL JURISDICTION ....................................................................................................15

III.     THE DISPLACEMENT OF A FEDERAL COMMON LAW CAUSE OF ACTION FOR NUISANCE REQUIRES THE STATE LAW CAUSE OF ACTION BE TREATED ON ITS OWN TERMS..........................................................................19

CONCLUSION.....................................................................................................23

CERTIFICATE OF SERVICE………………………………………………….24

CERTIFICATE OF COMPLIANCE………………………………………......25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abbatiello v. Monsanto Co.*,
  522 F. Supp. 2d 524 (S.D.N.Y. 2007)....................................................................8

*Alexandria Resident Council, Inc. v. Alexandria Redevelopment & Hous. Auth.*,
  11 F. App'x 283, 287 (4th Cir. 2001).................................................................. 23

*Am. Elec. Power, Co. v. Connecticut*
  564 U.S 410 (2011).......................................................................................21, 22

*Am. Fuel & Petrochemical Manufacturers v. O'Keeffe*,
  903 F.3d 903 (9th Cir. 2018)…………………………………………...………18, 20

*Appalachian Volunteers, Inc. v. Clark*,
  432 F.2d 530 (6th Cir. 1970)…………………………………………….………14

*Barbour v. Int'l Union*,
  640 F.3d 599 (4th Cir. 2011)…………………………………………………..12

*City of Chicago v. Am. Cyanamid Co.*,
  823 N.E.2d 126 (Ill. App. Ct. 2005).....................................................................7

*City of Cincinnati v. Beretta U.S.A. Corp.*,
  768 N.E.2d 1136 (Ohio 2002).............................................................................6

*City of Gary v. Smith & Wesson Corp.*,
  801 N.E.2d 1222 (Ind. 2003).............................................................................6

*City of Greenwood, Miss. v. Peacock*,
  384 U.S. 808 (1966)…………………………………………..…………………12

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*City of Milwaukee v. Illinois*,
   451 U.S. 304 (1981)................................................................................22

*City of Milwaukee v. NL Indus.*,
   762 N.W.2d 757 (Wis. Ct. App. 2008)..................................................7

*City of New York v. BP P.L.C.*,
   325 F. Supp. 3d 466 (S.D.N.Y. 2018)…………………...…………………..8

*City of New York v. BP P.L.C.*,
   No. 18-2188 (2d Cir. July 26, 2018)…………………….……………......8

*City of Oakland v. BP P.L.C.*,
   325 F. Supp. 3d 1017 (N.D. Cal. 2018)..................................................8

*City of Oakland v. BP P.L.C.*,
   No. 18-16663 (9th Cir. Sept. 4, 2018)..................................................8

*City of Portland v. Monsanto Co.*,
   2017 WL 4236583 (D. Or. Sept. 22, 2017)…………………...………..……….7

*City of Spokane v. Monsanto Co.,*
   2016 WL 6275164 (E.D. Wa. Oct. 26, 2016)……………………...……7-8

*City of St. Louis v. Benjamin Moore & Co.*,
   226 S.W.3d 110 (Mo. 2007)...................................................................7

*City of Walker v. Louisiana*,
   877 F.3d 563 (5th Cir. 2017)……………………………..…………12, 15

*Cleveland v Ameriquest*,
   621 F. Supp. 2d 513 (N.D. Ohio 2009)..................................................7

# TABLE OF AUTHORITIES

**Page(s)**

## CASES CONT'D

*Coal. for Competitive Elec. v. Zibelman*,
   272 F. Supp. 3d 554 (S.D.N.Y. 2017)...................................................20

*Columbia Pac. Bldg. Trades Council v. City of Portland*,
   412 P.3d 258 (Or. Ct. App. 2018)...........................................................20

*Comer v. Murphy Oil USA*,
   585 F.3d 855 (5th Cir. 2009)...................................................................24

*Comer v. Murphy Oil USA*,
   607 F.3d 1049 (5th Cir. 2010)…………………………………..…………24

*ConAgra Grocery Prod. Co. v. California*,
   2018 WL 3477388 (U.S. Oct. 15, 2018).................................................7

*County of San Mateo v. Chevron Corp.*,
   294 F. Supp. 3d 934 (N.D. Cal. 2018)………………………………...8, 23

*Electric Power Supply Association v. Star*,
   904 F.3d 518 (7th Cir. 2018)...................................................................20

*Energy and Env't Legal Inst. v. Epel*,
   43 F. Supp. 3d 1171 (D. Colo. 2014).....................................................20

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*,
   463 U.S. 1 (1983)………………………………………………………...24

*In re Comer*,
   562 U.S. 1133 (2011).............................................................................24

*In re Lead Paint Litig.*,
   924 A.2d 484 (N.J. Sup. Ct. 2007)...........................................................7

# TABLE OF AUTHORITIES

**Page(s)**

## CASES CONT'D

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
725 F.3d 65 (2d Cir. 2013)........................................................................7

*In re: National Prescription Opiate Litigation*,
  1:17-MD-2804 (N.D. Ohio Dec. 8, 2017)............................................7

*Int'l Paper Co. v. Ouellette*,
  479 U.S. 481 (1987)............................................................................22

*Jacks v. Meridian Res. Co.*,
  701 F.3d 1224 (8th Cir. 2012)…………………………………………14, 15

*Lee v. Murraybey*,
  487 Fed.Appx. 84 (4th Cir. 2012)…………………………….…………..12

*Little v. Louisville Gas & Elec. Co.*,
  805 F.3d 695 (6th Cir. 2015)................................................................22

*Lu Junhong v. Boeing Co.*,
  792 F.3d 805 (7th Cir. 2015)………………………………………………14

*Merrick v. Diageo Ams. Supply, Inc.*,
  805 F.3d 685 (6th Cir. 2015)................................................................22

*Mulcahey v. Columbia Organic Chemicals Co., Inc.*,
  29 F.3d 148 (4th Cir. 1994)…………..………………………………………12

*N.Y. Trap Rock Corp. v. Town of Clarkstown*,
  299 N.Y. 77, 85 N.E.2d 873 (1949)......................................................5

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
  696 F.3d 849 (9th Cir. 2012)..........................................................22, 23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES CONT'D

*Native Vill. of Kivalina v. Exxon Mobil Corp.,*
  663 F. Supp. 2d 863 (N.D. Cal. 2009)...............................................................23

*Noel v. McCain,*
  538 F.2d 633 (4th Cir. 1976)………………………………………….....…..11

*Pashby v. Delia,*
  709 F. 3d 307 (4th Cir. 2013)……………………………………………….15

*Patel v. Del Taco, Inc.,*
  446 F.3d 996 (9th Cir. 2006)……………………...…………………….....12

*People v. ConAgra Grocery Prod. Co.,*
  227 Cal. Rptr. 3d 499 (Ct. App. 2017)...................................................................7

*Rhode Island v. Chevron Corp.,*
  No. 18-395 WES, 2019 WL 3282007 (D.R.I. July 22, 2019)…………………...8

*Robertson v. Ball,*
  534 F.2d 63 (5th Cir. 1976)……………………………………………….....14

*Rocky Mtn. Farmers v. Corey,*
  730 F.3d 1070 (9th Cir. 2013)...............................................................20

*Rocky Mtn. Farmers v. Corey,*
  2019 WL 254686 (9th Cir. Jan. 19 2019)………..………………………....20

*Rux v. Republic of Sudan,*
  461 F.3d 461 (4th Cir. 2006)………………………………………….15

*Severonickel v. Gaston Reymenants,*
  115 F.3d 265 (4th Cir. 1997)……………………………………………….12

# TABLE OF AUTHORITIES

## CASES CONT'D

*Sherwin-Williams Co. v. California*,
  2018 WL 3477401 (U.S. Oct. 15, 2018) ............................................................7

*State v. Lead Indus., Ass'n, Inc.*,
  951 A.2d 428 (R.I. 2008)....................................................................................7

*State v. Purdue Pharma LP*,
  No. CJ-2017-816 (Okl. Dist. Aug. 26, 2019)…………………………………..8

*Tex. Indus., Inc. v. Radcliff Materials, Inc.*,
  451 U.S. 630 (1981)...........................................................................................17

*Univ. of S. Alabama v. Am. Tobacco Co.*,
  168 F.3d 405 (11th Cir. 1999)…………………………………………….....12

*White v. Smith & Wesson Corp.*,
  97 F. Supp. 2d 816 (N.D. Ohio 2000)................................................................7

## STATUTES

28 U.S.C.
  § 1292………………………………………..……………………………14, 15
  § 1442……………………………………………………………..……10, 11, 12
  § 1443……………………………………………………………….....11, 12, 14
  § 1446(b)(2)(B)………………………………………………………………..12
  § 1447…………………………………….....3, 10, 11, 12, 13, 14, 15, 16
  § 1453……………………………………………………………………….14

Cal. Health & Safety Code § 38501........................................................................19

Greenhouse Gas Emissions Reduction Act of 2009,
  ch. 171, 2009 Md. Laws 171…………………………………………………18

# TABLE OF AUTHORITIES

## STATUTES CONT'D

N.Y. Community Risk and Resiliency Act, Assemb. B. A6558A;
 S.B. S6617A 2014 N.Y. Sess. Laws Ch. 355 (S. 6617-B)
 (McKinney) 335..................................................................................18

Or. Rev. Stat. § 468A.200(3)……………………………………………….19

Pub. L. No. 112-51, 125 Stat. 545 (2011)............................................11

## LEGISLATIVE MATERIALS

H.R. Rep. 112-17 (2011),
 *reprinted in* 2011 U.S.C.C.A.N. 420……………………...…………………11, 13

## OTHER AUTHORITIES

2 M. Keely et al., *Ch. 11: Built Environment, Urban System, and Cities* in Impacts,
 Risks, and Adaptation in the United States: The Fourth National Climate
 Assessment (D.R. Reidmiller et al. eds., 2018)…………….………………….2

15A Charles Alan Wright et al., Fed. Prac. & Proc. Juris.
 § 3914.11 (2d ed.) …………………………………………………….…14

Center for Climate and Energy Solutions, State Climate Policy Maps,
https://www.c2es.org/content/state-climate-policy/ (last visited Jan. 24, 2019)….19

No. Car. Exec. Order No. 80 (Oct. 29, 2018)……………………………..18

Sarah L. Swan, *Plaintiff Cities*,
 71 Vand. L. Rev. 1227 (2017)................................................................6

VA Executive Directive 11 (2017)…………………………………………..18

# TABLE OF AUTHORITIES

Page(s)

## OTHER AUTHORITIES CONT'D

William L. Prosser, *Private Action for Public Nuisance*,
  52 Va. L. Rev. 997 (1966)..........................................................................5

Local Government Amici comprises three of the nation's leading local government associations. The National League of Cities (NLC) is the oldest and largest organization representing municipal governments throughout the United States. Its mission is to strengthen and promote cities as centers of opportunity, leadership, and governance. Working in partnership with forty-nine State municipal leagues, NLC serves as a national advocate for more than 19,000 cities and towns, representing more than 218 million Americans. Its Sustainable Cities Institute serves as a resource hub for climate change mitigation and adaptation for cities. The U.S. Conference of Mayors (USCM) is the official non-partisan organization of U.S. cities with a population of more than 30,000 people (approximately 1,400 cities in total). USCM is home to the Mayors Climate Protection Center, formed to assist with implementation of the Mayors Climate Protection Agreement. The International Municipal Lawyers Association (IMLA) is a nonprofit, nonpartisan professional organization consisting of more than 2,500 members. The membership is composed of local government entities, including cities and counties, and

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E) amici states that no party's counsel authored this brief, and no party, party's counsel, or person other than *amici* or its members or counsel contributed financial support intended to fund the preparation or submission of this brief.

subdivisions thereof, as represented by their chief legal officers, state municipal leagues, and individual attorneys. IMLA serves as an international clearinghouse of legal information and cooperation on municipal legal matters. Established in 1935, IMLA is the oldest and largest association of attorneys representing United States municipalities, counties, and special districts.

Over eighty percent of Americans now live in urban areas, and even more of them work there; as a consequence, Local Government Amici's members are responsible for understanding the risks to and planning for the wellbeing of the great majority of Americans. The concentration of people, activity, and infrastructure in cities makes them uniquely valuable economically. It also serves to compound the adverse impacts of a host of climatic changes, including sea level rise; increasingly frequent and severe storms that pose immediate threats to human life and critical infrastructure; damaged and disappearing coastlines; degraded ecosystems and reduced ecosystem services function; increases in heat-related deaths; poor air quality and exacerbated health problems; longer droughts that combine with increased temperatures and water evaporation rates to strain water supplies; and heightened wildfire risk. *See* 2 M. Keely et al., *Ch. 11: Built Environment, Urban System, and Cities* in Impacts, Risks, and Adaptation in the United States: The Fourth National Climate Assessment 444–447 (D.R. Reidmiller et al. eds., 2018).

Local Government Amici's interests in this case are twofold. First, as representatives of local governments nationwide, amici are particularly sensitive to the needs for a balanced federal-state judicial system. This case, which seeks a determination of local government parties' rights under state law, raises a critical federalism issue: the appropriate scope of appellate review of a district court's remand order under 28 U.S.C. § 1447(d). Allowing any defendant to obtain plenary review of all aspects of a remand order just by including an argument for federal officer removal would fundamentally disrupt local governments' ability to litigate claims brought under state law in state courts, and would incentivize inclusion of meritless federal officer removal claims and increased attempts to appeal remand orders due to that inclusion. Second, should the Court extend its review beyond this limitation, Local Government Amici have a unique interest in the Court's proper recognition of state court jurisdiction over state law claims for injuries arising from climate change impacts. The district court properly found that it lacked subject matter jurisdiction over Plaintiff's state law claims. Judicial conversion of a variety of well pled state law claims into vaguely defined federal common law claims, and the exercise of federal jurisdiction over them Defendants seek, would threaten to fundamentally intrude upon municipal governments' authority within our federalist system to rely on state law and state courts to seek redress for localized harms. In a contemporary world defined by complex economic and environmental systems that

transcend multiple borders, even conduct arising in part outside a municipality nonetheless can cause highly damaging local impacts.

The district court's decision in this case is fully consistent with essential federalism principles, and recognizes the right of local governments to bring state law claims for climate change harms in state courts. Local Government Amici respectfully urge this Court to limit the scope of its review to the sole issue properly before it, concerning Defendants' meritless claim of federal officer jurisdiction. Should the Court review other aspects of the district court's remand order it should affirm the decision to remand for lack of subject matter jurisdiction and sustain the viability of Plaintiff's state law claims.

Local Government Amici file this brief pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure and Circuit Rule 29(b). All parties to the appeal have consented to the filing of this brief.

**BACKGROUND**

State law public nuisance, product liability, trespass, negligence, and other tort claims provide an important means for cities and local governments to seek abatement of and damages for localized harms arising from activities that cross jurisdictional boundaries, as well as justice for their residents suffering those harms, including their most vulnerable populations. Cities have, for instance, long employed state public nuisance law to address conduct offensive to the community, from environmental pollution to red light districts, as an exercise of their inherent and reserved police power. *See* William L. Prosser, *Private Action for Public Nuisance*, 52 Va. L. Rev. 997 (1966) (tracing the history of public nuisance). As the New York Court of Appeals noted some 80 years ago, in a statement emblematic of conditions nationwide:

> "[W]here the public health is involved, the right of the town to bring such an action to restrain a public nuisance may be tantamount to its right of survival… [I]t is clear that a public nuisance which injures the health of the citizens of a municipality imperils the very existence of that municipality as a governmental unit. The right to exist necessarily implies the right to take such steps as are essential to protect existence."

*N.Y. Trap Rock Corp. v. Town of Clarkstown*, 299 N.Y. 77, 84, 85 N.E.2d 873, 877–78 (1949). In this long history courts have always played a crucial role, balancing competing interests to determine where there has been an "unreasonable interference" with a public right. State and federal legislation addressing particular

social problems has undoubtedly reduced the domain of public nuisance, but it has not eliminated it. The same can be said of other tort, product liability, and trespass claims. Indeed, these causes of action continue to play a vital role for cities, allowing cities to play a *parens patriae*-like role on behalf of their residents, and offering an opportunity to hold private actors accountable for harms that result from their products and activities.

Cities' use of state law claims, in both state and federal courts, to address cross-jurisdictional issues began more than three decades ago, when cities joined state attorneys general litigating asbestos and tobacco claims.[2] *See* Sarah L. Swan, *Plaintiff Cities*, 71 Vand. L. Rev. 1227, 1233 (2017). In the mid-1990s, cities again sought to protect their residents by suing the gun industry, invoking state public nuisance, among other claims. *See, e.g.*, *City of Gary v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1227 (Ind. 2003) (upholding claims for public nuisance, negligent sale, negligent design, and misleading and deceptive advertising); *City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1142 (Ohio 2002) (upholding claims for public nuisance, negligence, negligent design, and failure to warn); *White v. Smith*

---

[2] New York City, San Francisco, and Los Angeles, along with Cook County, Illinois, and Erie County, New York, all joined the 1998 Master Settlement Agreement. *See* Nat'l Ass'n of Attorneys Gen., Master Settlement Agreement, exh. N, at http://www.naag.org/assets/redesign/files/msa-tobacco/MSA.pdf (last visited Nov. 14, 2018).

& *Wesson Corp.*, 97 F. Supp. 2d 816, 829 (N.D. Ohio 2000) (allowing public nuisance and negligent design claims). Another decade later, cities pursued state public nuisance, tort, and product liability claims to abate the harms caused by the gasoline additive MTBE and by lead paint. *See, e.g.*, *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 725 F.3d 65, 121 (2d Cir. 2013); *People v. ConAgra Grocery Prod. Co.*, 227 Cal. Rptr. 3d 499, 598 (Ct. App. 2017), *reh'g denied* (Dec. 6, 2017), *review denied* (Feb. 14, 2018), *cert. denied sub nom. ConAgra Grocery Prod. Co. v. California*, 2018 WL 3477388 (U.S. Oct. 15, 2018), and *cert. denied sub nom. Sherwin-Williams Co. v. California*, 2018 WL 3477401 (U.S. Oct. 15, 2018); *City of Milwaukee v. NL Indus.*, 762 N.W.2d 757, 770 (Wis. Ct. App. 2008); *State v. Lead Indus., Ass'n, Inc.*, 951 A.2d 428, 458 (R.I. 2008); *In re Lead Paint Litig.*, 924 A.2d 484, 503 (N.J. Sup. Ct. 2007); *City of St. Louis v. Benjamin Moore & Co.*, 226 S.W.3d 110, 116 (Mo. 2007); *City of Chicago v. Am. Cyanamid Co.*, 823 N.E.2d 126, 140 (Ill. App. Ct. 2005). In recent years, cities have brought similar cases against financial institutions for the consequences of the subprime mortgage crisis, against pharmaceutical companies to help carry the costs needed to address the opioid epidemic, and against Monsanto to compensate for harms from Polychlorinated Biphenyl (PCB) contamination. *See, e.g.*, *In re: National Prescription Opiate Litigation*, 1:17-MD-2804 (N.D. Ohio Dec. 8, 2017); *Cleveland v Ameriquest*, 621 F. Supp. 2d 513, 536 (N.D. Ohio 2009); *City of*

*Portland v. Monsanto Co.*, 2017 WL 4236583 (D. Or. Sept. 22, 2017); *City of Spokane v. Monsanto Co.,* 2016 WL 6275164 (E.D. Wa. Oct. 26, 2016)*; Abbatiello v. Monsanto Co.*, 522 F. Supp. 2d 524, 541 (S.D.N.Y. 2007). *See also State v. Purdue Pharma LP*, No. CJ-2017-816 (Okl. Dist. Aug. 26, 2019) (finding pharmaceutical company liable for public nuisance where false and misleading statements caused opioid epidemic);

All of these cases involved claims under state law, and *none* of them saw a state law claim judicially converted into a federal common law claim, much less converted into a federal claim for subject matter jurisdiction purposes, only to then find the federal claim displaced by federal statute. In this respect, the district court's decision stands in line with a consistent body of jurisprudence that has sustained the availability of state claims for complex cases like this one. *See, e.g., Rhode Island v. Chevron Corp.*, No. 18-395 WES, 2019 WL 3282007 (D.R.I. July 22, 2019) (ordering remand of government lawsuit against fossil fuel companies), *appeal filed* Aug. 9, 2019; *County of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934 (N.D. Cal. 2018) (same), *appeal pending*, Nos. 18-15499, 18-15502, 18-15503, 18-16376 (9th Cir.). (The only decisions to come out the other way are *City of Oakland v. BP P.L.C.*, 325 F. Supp. 3d 1017, 1028 (N.D. Cal. 2018), *appeal pending, City of Oakland v. BP, P.L.C.*, No. 18-16663 (9th Cir.), and *City of New York v. BP P.L.C.*, 325 F. Supp. 3d 466, 1028 (S.D.N.Y. 2018), *appeal pending, City of New York v.*

*BP P.L.C.*, No. 18-2188 (2d Cir.), both of which adopt elements of the basic reasoning underlying Defendants' arguments here.)

The district court's decision should be affirmed. As Plaintiff argues in their brief, and as discussed further below, the Court should cabin its review of the district court's decision, and address only the narrow question of whether removal is warranted due to federal officer jurisdiction. As Plaintiff further argues, remand was appropriate because Plaintiff's claims do not arise under federal law, are not completely preempted by the Clean Air Act, do not raise disputed and substantial federal issues, and do not fit into the other narrow categories Defendants proffer that might support removal.

This is, in short, a case against manufacturers, marketers, and sellers, that sounds in nuisance, negligence, and strict liability for design defect and failure to warn under state law and, in light of those defendants' conduct, seeks to recover costs expended by a local government to address foreseeable harms suffered as a result of the intended use of their products, along with other relief. There are no "uniquely federal interests" at stake in this case. This is not a case about regulating greenhouse gas emissions anywhere, or controlling federal fossil fuel leasing programs on public lands, or dictating foreign governments' climate policies or energy regimes. This case raises textbook claims under state law, seeking to allocate fairly a portion of the significant costs required to protect city and county residents

from harms inflicted by Defendants' products. Ultimately, uniform adjudication of the financial burdens local governments bear for climate change adaptation measures might or might not be desirable public policy, but it is not necessary, and the law does not command it. The district court accurately perceived the extraordinary implications of Defendants' arguments to the contrary. Its decision should be upheld.

## ARGUMENT

### I. FEDERALISM PRINCIPLES REQUIRE APPELLATE REVIEW OF THE DISTRICT COURT'S REMAND ORDER BE LIMITED TO THE ISSUE CONGRESS EXPRESSLY EXCEPTED

The district court properly remanded this case to state court since no basis for removal to federal court applies, including federal officer jurisdiction pursuant to 28 U.S.C. § 1442(a)(1). *See* JA.366 (Order Granting Mot. to Remand); Pl. Br. 14–53. This Court should limit its review of the remand order to the question of whether removal was required due to federal officer jurisdiction. *See* Pl. Br. 8–14. This limitation, which is consistent with the plain meaning, legislative history, and Fourth Circuit precedent for Section 1447(d), preserves the balance of federalism Congress sought to protect when it authorized appellate review of federal-officer removal under 28 U.S.C. § 1442.

Appellate review of remand orders is generally barred; however, 28 U.S.C. § 1447(d) provides two limited exceptions. 28 U.S.C. § 1447(d). An appellate court

has jurisdiction to review whether a case was properly removed under 28 U.S.C. § 1443 (civil rights removal provision) or 28 U.S.C. § 1442(a)(1) (federal officer removal provision). The second basis, federal officer removal, was added in 2011. Removal Clarification Act of 2011, Pub. L. No. 112-51, 125 Stat. 545. The Removal Clarification Act of 2011 simply added the words "1442 or" into Section 1447(d) so that Section 1447(d) now reads:

> "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise."

Congress intended for this new addition to be identical to the civil rights exception. H.R. REP. 112-17, at 7 (2011), *reprinted in* 2011 U.S.C.C.A.N. 420, 425 ("Section 2(d) amends Section 1447 by permitting judicial review of Section 1442 cases that are remanded, *just as they are* with civil rights cases.") (emphasis added).

That the provisions are to be treated the same is important. This Court has for more than forty years limited the scope of appellate review of remand orders to the question of whether removal was proper under Section 1443 when interpreting the civil rights removal exception. *See Noel v. McCain,* 538 F.2d 633, 635 (4th Cir. 1976) (finding that jurisdiction to review remand of a non-excepted ground for removal "is not supplied by also seeking removal under § 1443(1)"); *Severonickel v.*

*Gaston Reymenants,* 115 F.3d 265, 266–69 (4th Cir. 1997); *Lee v. Murraybey,* 487 Fed.Appx. 84 (4th Cir. 2012). *Accord City of Walker v. Louisiana*, 877 F.3d 563, 566 n.2 (5th Cir. 2017); *Patel v. Del Taco Inc.,* 446 F.3d 996, 998 (9th Cir. 2006). The Court must treat appellate review of decisions on Section 1442 removal just as it does decisions on Section 1443 removal.

Federalism principles also require this Court to strictly construe Section 1447(d). *Barbour v. Int'l Union*, 640 F.3d 599, 605 (4th Cir. 2011) (en banc) ("Removal statutes, in particular, must be strictly construed, inasmuch as the removal of cases from state to federal court raises significant federalism concerns.") (citing to cases), *abrogated on other grounds by* 28 U.S.C. § 1446(b)(2)(B); *Mulcahey v. Columbia Organic Chemicals Co., Inc.*, 29 F.3d 148, 151 (4th Cir. 1994) ("Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction."). *Accord Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly."); *City of Greenwood, Miss. v. Peacock*, 384 U.S. 808, 831 (1966) ("[T]he provisions of § 1443(1) do not operate to work a wholesale dislocation of the historic relationship between the state and the federal courts in the administration of the . . . law.").

Indeed, federalism motivated the Removal Clarification Act of 2011, through which Congress specifically sought to protect federal officers from being brought into state courts under state pre-civil suit discovery statutes. H.R. REP. 112–17, at 3, 2011 U.S.C.C.A.N. at 422 ("The purpose of the law is to take from state courts the indefeasible power to hold a Federal officer or agent criminally or civilly liable for an act allegedly performed in the execution of their Federal duties."). Far from expanding the scope of appellate review to entire remand orders, an expansion that would tip the federalist scale in significant and unpredictable ways, Congress' amendment of the removal procedure statute was concerned with *preserving* the existing balance of power between state and federal courts in cases involving federal officers. Following this Court's precedent interpreting Section 1447(d) to limit appellate review to the grounds that fall within Section 1447(d)'s exception adheres to that intent.

The Chamber of Commerce, as Amicus Curiae, offers an alternative interpretive approach to Section 1447(d), in support of a broader reading of its clear limitations that would have this Court review the entire remand order. *See* Br. of Chamber of Commerce. None of the arguments the Chamber offers in support of its approach hold water. First, the Chamber relies on Wright & Miller and *Lu Junhong v. Boeing Co.*, 792 F.3d 805 (7th Cir. 2015) to argue that a broader review does not cause undue delay that would frustrate the purpose of the general ban on appeal of

13

remand orders. Br. of Chamber of Commerce 24–25. Yet, there is no evidence to support this view, it runs against both Congressional intent and common sense, and most circuits, including this one, have not adopted it. *See e.g.*, *Appalachian Volunteers, Inc. v. Clark*, 432 F.2d 530, 533 (6th Cir. 1970) (stating that "the review of issues other than those directly related to the propriety of the remand order itself would frustrate the clear Congressional policy of expedition"); *Robertson v. Ball*, 534 F.2d 63, 66 n.5 (5th Cir. 1976) (warning against Section 1447(d) exceptions serving as a "dilatory tactic"). Wright & Miller itself plainly acknowledges that "it has been held that review is limited to removability under § 1443." 15A Wright et al., Fed. Prac. & Proc. Juris. § 3914.11 (2d ed.). As the Eighth Circuit explained, "[t]he plain language of § 1447(d) governs this" result. *Jacks v. Meridian Res. Co.*, 701 F.3d 1224, 1229 (8th Cir. 2012).

Second, although the Chamber of Commerce posits that broader review is consistent with appellate procedure in other contexts such as 28 U.S.C. § 1292(b), 28 U.S.C. § 1453 (or the Class Action Fairness Act (CAFA)), appeals of orders granting or denying injunctions, and pendent-appellate-jurisdiction cases, all of these are distinguishable from Section 1447(d) or simply irrelevant. As Plaintiff argues, Section 1292(b) does not establish a general rule for the scope of appellate appeal for statutes using the word "order." Pl. Br. 10–13. Furthermore, while some circuits have read CAFA to allow for broader review, other courts have correctly

determined that "jurisdiction to review a CAFA remand order stops at the edge of the CAFA portion of the order." *City of Walker*, 877 F.3d at 567. *See also Jacks v. Meridian Res. Co.,* 701 F.3d at 1229.

In regards to the scope of appellate review of injunctions and the exercise of pendent-appellate-jurisdiction, the Chamber of Commerce's argument appears to be that in some contexts courts of appeals may review matters that satisfy a well-articulated standard, such as issues inextricably linked to an injunction or those that meet the high standard for pendent appellate jurisdiction. Br. of Chamber of Commerce 28–29, *citing, e.g., Pashby v. Delia*, 709 F. 3d 307, 319 (4th Cir. 2013) (declining interlocutory review of a class certification because it was not "closely connected to the preliminary injunction."); *Rux v. Republic of Sudan*, 461 F.3d 461, 475 (4th Cir. 2006) (declining pendent appellate jurisdiction over denial of motion to dismiss for lack of personal jurisdiction because review was not necessary). This innocuous point does nothing to support a broad principle affording appellate courts the discretion to expand the scope of review whenever it might allow the court to address issues that may later come before them on appeal. Nor does it bear on the scope of appellate review of a district court remand order under Section 1447(d). The Chamber of Commerce's proposed expansion of the scope of review would effectively undermine any and all limits imposed by Congress.

Finally, the Chamber makes a federalism argument, but conflates separate issues of law in so doing. The narrow exception Congress created for federal officer removal is governed by a different standard of law than diversity and federal question jurisdiction, all of which the Chamber incorrectly collapses into "federal interests." Br. of Chamber of Commerce 32.

The language of the statute, Congressional intent, established circuit precedent, and federalism principles all support limiting the scope of appellate review to Section 1447(d)'s stated exceptions. Although Defendants attempt to wedge the federal door open with federal officer removal to allow for appeal of removal grounds that are not reviewable, this Court should consider only the meritless claim of federal officer removal on appeal.

## II.    THERE ARE NO "UNIQUELY FEDERAL INTERESTS" AT STAKE IN THIS CASE SUFFICIENT TO REQUIRE CONVERSION OF PLAINTIFF'S STATE LAW CLAIMS INTO FEDERAL LAW CLAIMS OR TO CONFER FEDERAL JURISDICTION

The district court properly concluded that it lacked subject matter jurisdiction because regardless of the transboundary nature of anthropogenic climate change there are no "uniquely federal interests" at issue in this case that require that the state law claims be transmuted into federal ones. The Supreme Court has described cases involving such "uniquely federal interests" as those "narrow areas [that are] . . .

concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases." *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641 (1981) (citation omitted). As the district court concluded and as Plaintiff persuasively argues in its brief, this case invokes none of those concerns. This holds true whether Defendants seek to frame Plaintiff's claims as "arising under" federal common law, as raising disputed and substantial federal issues, or as being completely preempted. As Plaintiff rightly points out, the first two arguments are masks for more straightforward preemption arguments properly addressed by state courts, and the last argument is simply wrong. Pl. Br. 21–41.

The reasoning underlying Defendants' argument that there are "uniquely federal interests" at stake in this matter would, if adopted by this Court, pose a risk to cities and counties across the country. If endorsed, such reasoning could empower federal common law to hold domain over a broad swath of policy areas, and federal courts to claim jurisdiction over a wide array of state law claims, subverting cities' and other local governments' ability to rely on traditional legal tools in state courts to pursue remedies for environmental harms, among other things.

This potential outcome is especially worrisome in the context of climate change. Climate change directly impacts subnational governmental interests. *See e.g.*, *Am. Fuel & Petrochemical Manufacturers v. O'Keeffe*, 903 F.3d 903, 913 (9th

Cir. 2018) ("[S]tates have a legitimate interest in combating the adverse effects of climate change on their residents."). *See also*, Greenhouse Gas Emissions Reduction Act of 2009, ch. 171, 2009 Md. Laws 171 (amended in 2016) (emphasizing that "it is in the best interest of the state to act early and aggressively;" and that "[i]t is necessary to protect the public health, economic well-being and natural treasures of the state by reducing harmful air pollutants such as greenhouse gas emissions"), VA Executive Directive 11 (2017), "Reducing Carbon Dioxide Emissions from the Electric Power Sector and Growing Virginia's Clean Energy Economy," (recognizing "that climate change threatens the Commonwealth of Virginia, from our homes and businesses to our critical military installations and ports" and directing state agency to develop plan to reduce greenhouse gas emissions); No. Car. Exec. Order No. 80 (Oct. 29, 2018) (recognizing "climate-related environmental disruptions pose significant health risks to North Carolinians" and directing state to reduce greenhouse gas emissions by 40% below 2005 levels by 2025); N.Y. Community Risk and Resiliency Act, Assemb. B. A6558A; S.B. S6617A 2014 N.Y. Sess. Laws Ch. 355 (S. 6617-B) (McKinney) 335 (requiring that state environmental agency adopt science-based sea-level rise projections into regulation and that applicants for permits or funding in a number of specified programs demonstrate that future physical climate risk due to sea-level rise, storm surge and flooding have been considered); Cal. Health & Safety Code § 38501 (2017) (finding that greenhouse gas

emissions are degrading the State's air quality, reducing the quantity and quality of available water, increasing risks to public health, damaging the State's natural environment and causing sea levels to rise); Or. Rev. Stat. § 468A.200(3) (finding that "[g]lobal warming poses a serious threat to the economic well-being, public health, natural resources and environment of Oregon"). As a result, States have taken a wide array of actions to combat climate change, including adopting adaptation or resilience plans. These efforts require the expenditure of significant funds and use of public resources. *See* Center for Climate and Energy Solutions, State Climate Policy Maps, https://www.c2es.org/content/state-climate-policy/ (last visited Aug. 28, 2019).

Cities have also been at the forefront of climate action. At last count, 1,060 mayors have joined the U.S. Conference of Mayors' Climate Protection Agreement. Some 280 cities and counties have joined the "We Are Still In" coalition, a group of more than 3,600 mayors, county executives, governors, tribal leaders, college and university leaders, businesses, faith groups, and investors who have committed to take action consistent with the United States' Paris Agreement commitments. In addition to the resources provided by Local Government Amici to their members, national and transnational peer networks such as Climate Mayors, Carbon Neutral Cities Alliance, C40, and ICLEI – Local Governments for Sustainability have been

formed to provide cities, city political leaders, and city agency staff with support and capacity to take on climate change challenges.

Importantly, courts have routinely upheld subnational climate actions in the face of challenges that they interfere with national interests or priorities and affirmed the legitimacy of state interests in climate action. *See, e.g.*, *Am. Fuel & Petrochemical Manufacturers v. O'Keeffe, supra* (upholding Oregon's low carbon fuel standard against dormant commerce clause challenge); *Rocky Mtn. Farmers v. Corey*, 2019 WL 254686 (9th Cir. Jan. 19 2019) (upholding California's low carbon fuel standard against preemption and dormant commerce clause challenge and noting it reflects "legitimate state interest"); *Rocky Mtn. Farmers v. Corey*, 730 F.3d 1070, 1106–07 (9th Cir. 2013) (same); *Electric Power Supply Association v. Star*, 904 F.3d 518 (7th Cir. 2018) (upholding Illinois promoting zero-carbon energy sources against dormant commerce cause and preemption by the Federal Power Act); *Coal. for Competitive Elec. v. Zibelman*, 272 F. Supp. 3d 554, 559 (S.D.N.Y. 2017) (holding New York State program promoting zero-carbon energy sources did not violate dormant commerce cause), *aff'd* 906 F.3d 41 (2d Cir. 2018); *Energy and Env't Legal Inst. v. Epel*, 43 F. Supp. 3d 1171 (D. Colo. 2014) (finding Colorado renewable energy mandate did not violate dormant commerce clause). *Cf. Columbia Pac. Bldg. Trades Council v. City of Portland*, 412 P.3d 258 (Or. Ct. App. 2018) (holding zoning ordinance banning new and expanded fossil fuel export terminals

did not violate dormant commerce clause but not reaching whether reducing greenhouse gasses is a legitimate local interest due to other interests supporting city's decision).

This consistent treatment by the courts of state and local efforts affirms that global climate change is also a local problem, requiring local solutions. As discussed in Part III below, courts have also, until recently, upheld the availability of state law claims for climate harms. This Court should keep this case in line with precedent.

## III. THE DISPLACEMENT OF A FEDERAL COMMON LAW CAUSE OF ACTION FOR NUISANCE REQUIRES THE STATE LAW CAUSE OF ACTION BE TREATED ON ITS OWN TERMS

As Plaintiff argues in its brief, the displacement of any federal common law claims by the Clean Air Act only confirms the viability of Plaintiff's state law claims. *See* Pl. Br. 24–28.

The Supreme Court, as all parties to the present litigation acknowledge, directly addressed the displacement of federal public nuisance in *Am. Elec. Power, Co. v. Connecticut*, 564 U.S. 410, 424 (2011) (*AEP*), explaining that "the Clean Air Act and the EPA actions it authorizes displace any federal common law right to seek abatement" of GHG emissions. The Ninth Circuit, following the Supreme Court's precedent, held "if a cause of action is displaced, displacement is extended to all remedies," including damages. *Native Vill. of Kivalina v. ExxonMobil Corp.*, 696

F.3d 849, 857 (9th Cir. 2012) (*Kivalina*). Neither *AEP* nor *Kivalina* foreclosed a public nuisance claim based on state law, nor the availability of state courts to adjudicate such a claim.

Indeed, they did just the opposite. The Supreme Court's express view is that the existence of a federal common law claim that has been displaced by federal legislation does *not* erase the possibility of state law claims; rather, it converts the availability of state claims into an ordinary question of statutory preemption. *See City of Milwaukee v. Illinois*, 451 U.S. 304, 327–329 (1981); *Int'l Paper Co. v. Ouellette*, 479 U.S. 481 (1987). Accordingly, in her opinion for a unanimous court in *AEP*, Justice Ginsburg wrote, "[i]n light of our holding that the Clean Air Act displaces federal common law, the availability *vel non* of a state lawsuit depends, *inter alia*, on the preemptive effect of the federal Act." *AEP*, 564 U.S. at 429. *See also Merrick v. Diageo Ams. Supply, Inc.*, 805 F.3d 685, 690 (6th Cir. 2015) and *Little v. Louisville Gas & Elec. Co.*, 805 F.3d 695, 698 (6th Cir. 2015) (state common law nuisance for interstate pollution not preempted by Clean Air Act).

The Ninth Circuit's decision in *Kivalina* further supports proceeding with the state law claims in this case. Discussing the supplemental state law claims filed there, the Ninth Circuit panel noted that the district court had declined to exercise supplemental jurisdiction and dismissed the claim without prejudice to re-file in state court. 696 F.3d at 854–55. *See also Native Vill. of Kivalina v. ExxonMobil Corp.*,

663 F. Supp. 2d 863, 882 (N.D. Cal. 2009) (stating that a federal court "may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction"), *aff'd* 696 F.3d 849, 857 (9th Cir. 2012); *see also Alexandria Resident Council, Inc. v. Alexandria Redevelopment & Hous. Auth.*, 11 F. App'x 283, 287 (4th Cir. 2001) ("Although a federal court has discretion to assert pendent jurisdiction over state claims even when no federal claims remain, . . . certainly if the federal claims are dismissed before trial ... the state claims should be dismissed without prejudice. . . . For, when all federal claims are dismissed early in the litigation, the justifications behind pendent jurisdiction— considerations of judicial economy, convenience and fairness to litigants—are typically absent." (citations omitted)). The concurrence in *Kivalina* stated unequivocally that "[d]isplacement of the federal common law does not leave those injured by air pollution without a remedy," and suggested state nuisance law as "an available option to the extent it is not preempted by federal law." 696 F.3d at 866 (Pro, J., concurring). Here, there can be no such preemption because federal law does not address either climate change adaptation damages or Defendants' product design and marketing activities, and therefore cannot preempt Plaintiff's claims. In any event, as the district court in *County of San Mateo v. Chevron* noted, state courts are "entirely capable of adjudicating" whether state laws claims are preempted by federal law, 294 F. Supp. 3d at 938; the possibility of preemption does not result in

23

the erasure of the cause of the action. Moreover, as Plaintiff persuasively argues, preemption is a defense to state law claims, and cannot provide the basis for federal court jurisdiction. *See e.g.*, Pl. Brief at 2–3; *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 14 (1983)

The Supreme Court and Ninth Circuit's jurisprudence is also consistent with the original Fifth Circuit panel's 2009 opinion in *Comer v. Murphy Oil USA*, 585 F.3d 855, 860 (5th Cir. 2009) (*Comer I*), *petition for writ of mandamus denied sub nom. In re Comer*, 562 U.S. 1133 (2011). In *Comer I*, plaintiffs seeking damages for injuries suffered as a result of Hurricane Katrina had invoked federal jurisdiction based on diversity. The Fifth Circuit panel found that a diversity suit brought under state law for damages was materially distinguishable from public nuisance claims brought under federal law and sustained the claims. 585 F.3d at 878-79. (The decision was subsequently vacated when the Fifth Circuit granted rehearing *en banc*; the Fifth Circuit then failed to muster a quorum for the rehearing, thereby effectively reinstating the district court's decision as a matter of law. *Comer v. Murphy Oil USA*, 607 F.3d 1049 (5th Cir. 2010)).

The weight of this precedent is overwhelming, and the district court's remand order is consistent with it. Defendants' argument that Plaintiff's state law claims challenging one set of behaviors (production, marketing, and sale of a product) should be converted into a federal law claim challenging another set of behaviors

24

(combustion of the product and emission of greenhouse gases) should be rejected. Even if this Court were to accept that there is a federal common law claim that could apply in this context, its displacement would demand the state law claims be heard on their own terms, and that *all* arguments about preemption, other than complete preemption, be heard in state court.

## CONCLUSION

For the foregoing reasons, Local Government Amici urge this Court to affirm the district court's Order Granting Motions to Remand.

Dated:     September 3, 2019                   Respectfully submitted,

s/   Michael Burger
Michael Burger
Susan Kraham
Morningside Heights Legal Services, Inc.
Columbia Environmental Law Clinic
435 W. 116th St.
New York, NY 10027
212-854-2372
*Counsel for Amici Curiae*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2019, I electronically filed the foregoing

brief with the Clerk of the Court for the United States Court of Appeals for the Fourth

Circuit by using the appellate CM/ECF system. Participants in the case are registered

CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

Dated: September 3, 2019                    s/   Susan Kraham

                                                   Susan Kraham
                                                   *Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 29(a)(5) and 32(a)(7)(B) because it contains 5,786 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Times New Roman 14-point font, a proportionally spaced typeface.

Dated: September 3, 2019                         s/   Susan Kraham

                                                 Susan Kraham
                                                 *Counsel for Amici Curiae*